## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAY D. KNOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:11-cv-00949-TWP-TAB |
| | ) | |
| MICHAEL L. SNIDER, and | ) | |
| THE SNIDER GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants Michael L. Snider's ("Mr. Snider") and

The Snider Group, Inc.'s ("Snider Group") (collectively, "the Defendants") Motion for Summary

Judgment (Dkt 27).  In his second Amended Complaint (Dkt. 23), Plaintiff Jay D. Knox ("Mr.

Knox") has filed three counts against the Defendants, alleging they intentionally discriminated

against him based on his alcoholism disability, retaliated against him for complaining about the

discrimination, and defamed him by providing false information to a prospective new employer,

TMC Transportation.  The Defendants argue that many of the alleged discriminatory and

retaliatory acts identified by Mr. Knox are time-barred and that they did not discriminate against

him, but fired him for missing several days of work.  The matter was originally filed by Mr.

Knox in Marion Superior Court and subsequently removed by the Defendants as some of the

claims arise under the Americans with Disabilities Act ("ADA").  For the reasons set forth

below, the Motion for Summary Judgment (Dkt. 27) is **GRANTED.**

# I.  BACKGROUND

**A.**   **Mr. Knox's History Regarding Alcohol Consumption**

The following undisputed facts are presented in the light most favorable to the non-moving party, Mr. Knox.  Mr. Knox began to consume alcohol at the early age of eighteen.  In 1991, he was arrested for driving under the influence ("DUI") of alcohol.  Then, after being sober for approximately eight months, Mr. Knox received a second DUI arrest in 1992 after he wrecked his Chevrolet S-10 pickup truck.  He pled not guilty on both occasions but was convicted of each offense following bench trials.  After his second DUI, Mr. Knox underwent treatment for alcohol abuse at St. Vincent Hospital; thereafter, he remained sober for approximately seven years.  Then, from 1999 until 2004, Mr. Knox regularly consumed alcohol followed by a four or five year period of sobriety.

In 2007, Mr. Knox and his wife went through a "pretty nasty divorce" and he resumed drinking alcohol.  The marriage was dissolved and pursuant to the Dissolution Decree, he was required to purchase an alcohol breath sensor so that his wife would be able to administer breath tests prior to Mr. Knox receiving visitation with his two children.  In addition, the Decree prohibited Mr. Knox from driving any vehicle in which his children were passengers.  Mr. Knox admits that he began drinking again around this time period.  Following an incident at a Snider Group jobsite on June 26, 2008, he agreed to undergo treatment for alcohol abuse.  On July 2, 2008 he was seen as an outpatient at St. Vincent Hospital and reported that he had drank two and a half gallons of whiskey in the previous three week period.  At his May 18, 2010 deposition, Mr. Knox testified that he was drinking in August 2009.

**B.     Mr. Knox's History with the Snider Group**

Mr. Knox began his employment with the Snider Group on or about May 3, 1986 as a heavy equipment operator.  He continued to work for the Snider Group for twenty-three years, until August 2009.  Throughout his employment, Mr. Snider and the Snider Group supported Mr. Knox when he received the two DUI convictions and during the marriage dissolution proceedings.  Specifically, in requesting a lenient sentence for Mr. Knox after his second DUI, J.S. Snider, the President of the Snider Group, wrote the following:

> Jay Knox is one of our success stories…and we are seeing some great strides in his level of responsibility and his ability to assume some role in leadership.  I know he has made a serious mistake and truly think this will be a growth experience for him.  I believe him when he says it will never happen again. [Plaintiff] never misses a day of work and claims to have learned his lesson so I respectfully suggest leniency in his sentence and save the harsher dealings for people who aren't trying to make something of themselves.

Dkt. 28-1 at 25.  Additionally, while Mr. Knox's dissolution of marriage was pending, he was arrested for allegations of child molestation involving one of his two daughters.  The charges were subsequently dismissed.  During this troubling period in Mr. Knox's life, Mr. Snider, the Vice President of the Snider Group, wrote a supportive letter on his behalf stating that:

> Jay Knox has been an employee of The Snider Group, Inc. for nearly 20 years.  Over the years I've gotten to know Jay very well and find him to be a reliable and trustworthy employee.  He is a caring and compassionate person and we are very glad to have him as an employee.  Jay has made great improvements over the past few years both in his professional duties and his personal life from what we see.  His love of his children is evident in his comments and stories and while his situation is unfortunate I see him as a good person and loving father.  I hope that what we see every day for many hours is taken into consideration as to the quality of person and father Jay Knox strives to be.

Additionally, Mr. Snider testified that while he was Mr. Knox's supervisor at the Snider Group, he had no reason to believe that he was consuming alcohol while working as a heavy

equipment operator.  However, sometime between 2003 and 2005 Mr. Snider received a report that Mr. Knox might have an alcohol problem.

**C.    Mr. Knox's Drinking Habits while working at the Snider Group**

Specifically, during the course of a project referred to as the Lost Run Farms Project, Mr. Snider recalls having a discussion with Mr. Knox sometime between 2003 and 2005.   Mr. Knox's supervisor, August Koch ("Mr. Koch"), informed Mr. Snider that he suspected Mr. Knox was under the influence of alcohol at the Lost Run Farms Project jobsite.  Mr. Snider discussed the allegations with Mr. Knox and Mr. Knox admitted to drinking heavily and, as such, was in no condition to perform his job duties for that day.  Mr. Snider suggested that Mr. Knox receive some "help" and informed him he would not be allowed to return to work until he had done so. Mr. Knox was allowed to return to work after showing Mr. Snider his prescription for Antabuse. Mr. Knox, however, claims to have no recollection of these incidents.

Mr. Knox says that in 2004 and again in 2008, he was harassed by a foreman who spread false statements related to his alcohol rehabilitation.   In both 2004 and 2008, Mr. Knox complained to the company regarding the alleged harassment and Mr. Snider told him he would transfer him from that particular foreman.  In his complaint filed with the Equal Employment Opportunity Commission ("EEOC"), Mr. Knox says in about March 2009, he was reassigned to work under the foreman who had previously harassed him, the foreman continued to harass him, he complained and when the company failed to take prompt corrective action, he was forced to look for other employment.  (Dkt. 28-5 at 3.)

On June 26, 2008, Mr. Snider received another call from Mr. Koch, indicating that Mr. Knox was acting abnormally while on the jobsite of a project known as the Town to Ditch project. Mr. Snider went to the Town to Ditch jobsite, approached Mr. Knox, and demanded that

he remove his sunglasses.  According to Mr. Snider, Mr. Knox's eyes appeared to be bloodshot, he appeared to slur his speech and Mr. Knox admitted to drinking alcohol the night before.  Mr. Knox's recollection is inapposite.  Mr. Knox recalls that he was upset that morning because his supervisor, Mr. Koch, had been harassing him and called him "dumbass".  After confronting Mr. Knox while at the jobsite, Mr. Snider ordered him to leave the jobsite.  Before leaving, Mr. Knox gave Mr. Snider his company ID but not his keys.  Following this encounter, Mr. Snider placed a memo in Mr. Knox's personnel file dated June 26, 2008, which described the incident as follows:

> Jay Knox quit this morning at 9:00 a.m. after being suspected of having alcohol on his breath.  Jay was asked to submit to a drug test at which time he opted to quit rather than take the test.  Per Mike Snider, Jay is not employed as of 9:00 a.m. this morning.  However, Mike advised Jay that he had until Monday June 30th, 2008 to determine if he still wanted to be employed.  Jay would need to be actively participating in an alcohol rehab program and provide proof that he has stayed clean.

On June 30, 2008, Mr. Snider and Dan Shotts, another vice president, met with Mr. Knox and offered help concerning his issue with alcohol.  On July 2, 2008, Mr. Knox began receiving outpatient care from St. Vincent Hospital.  Mr. Knox presented a doctor's note to the Snider Group on July 14, 2008, acknowledging that he was still receiving medical treatment, but was able to return to work.  Mr. Knox admits to drinking whiskey the night before June 26, 2008 but denies being drunk on the job on June 26, 2008.  Additionally, he states that he went to St. Vincent Hospital for treatment regarding his alcohol use on his own.

## D.     Mr. Knox Does Not Appear for Work at the Snider Group

Between August 10 and August 15, 2009, Mr. Knox did not show up for work at the Snider Group.  On August 12, 2009, Mr. Knox called the Snider Group and left a voice mail message stating that he "quit".  Then, on August 19, 2009, Mr. Knox received a letter from the

Snider Group which informed him that he was terminated from the Snider Group effective August 10, 2009 for abandoning his job.

Mr. Knox testified that he stopped working at the Snider Group because he received a tentative employment offer to work for TMC Transportation as an over-the-road truck driver and he was taking care of matters related to his prospective new employment.  Mr. Knox did not get the job at TMC Transportation and he believes his employment with TMC Transportation was terminated due to Snider Group's response to an employment verification form.   The employment verification form, sent to Mr. Snider on September 9, 2009, contained six questions related to drug and alcohol testing.   After receiving the form, Mr. Snider indicated, "yes" in response to the question, "Did the employee refuse to be tested?"  Mr. Snider indicated "no" to the question "If you answered yes to any of the above items, did the employee complete the return to work duty process?"  Additionally, Mr. Snider also answered "yes" to the question "Terminated?"  Mr. Knox believes Mr. Snider's answers to these particular questions were inaccurate.  On May 26, 2010, he filed a charge of discrimination with the EEOC.  Additional facts are added below as needed.

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor."  *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir.

2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Hemsworth*, 476 F.3d at 490 (citation omitted).  "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted).  "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III. <u>DISCUSSION</u>

In his second amended complaint, Mr. Knox argues that the Snider Group, along with Mr. Snider, discriminated against him and retaliated against him in violation of the ADA.  *See* 42 U.S.C. § 12101.  In addition, Mr. Knox brings a state law claim for defamation against the Defendants alleging they lied on the employment verification form given to TMC Transportation which resulted in the withdrawal of his employment offer.  With respect to these allegations, the Defendants argue Mr. Knox has not provided sufficient evidence to establish the three counts alleged in his second amended complaint.  The Court will address each of these issues below.

**A.     ADA Claims**

**1.     Time-Barred Claims**

As an initial matter, Defendants argue that a portion of Mr. Knox's ADA claims of discrimination and retaliation are timed barred.  Time exhaustion of administrative remedies is a condition precedent to filing suit under Title VII. *See Vitug v. Multistate Tax Comm'n*, 88 F.3d

506, 511 (7th Cir. 1996).  In addition, while a claimant must generally file a charge with the EEOC within 180 days of the alleged discriminatory act, the time limit is extended to 300 days if the claimant institutes proceedings with a state or local agency that possess the authority to address such an issue.  *Risk v. Ford Motor Co.*, 48 F. Supp. 2d 1135, 1140 (S.D. Ind. 1999); *see Russell v. Delco Remy Div.*, 51 F.3d 746, 750 (7th Cir. 1995) (noting that Indiana vests the Indiana Civil Rights Commission with the authority to pursue charges of discrimination).  Therefore, "[i]n a deferral state, such as Indiana, a charge must be filed within 300 days of the occurrence of the act that is the basis for the complaint."  *Id.* (citing *Doe v. R.R. Donnelley & Sons. Co.*, 42 F.3d 439, 445 (7th Cir. 1994)).

In the present case, Mr. Knox filed charges with the Indiana Civil Rights Commission and the EEOC alleging charges of discrimination and retaliation based on an alleged disability on May 21 and May 26, 2010, respectively.  In particular, Mr. Knox asserted that he was harassed by his foreman in 2004 and then again on June 26, 2008.  Each time the alleged incidents occurred, he claims he complained to the company's management.  In addition, in March 2009, Mr. Knox alleges he was harassed again by the same foreman and complained to management regarding the incident.  Based on Mr. Knox's EEOC filing date, Defendants argue that the incidents set forth above, as indicated in paragraphs 7-12 of the second amended complaint, are time-barred.  Dkt. 29 at 9; *see Roney v. ILL. Dept. of Transp.*, 474 F.3d 455, 460 (7th Cir. 2007) ("If a plaintiff does not file a charge concerning a discrete act of discriminatory conduct within 300 days of its occurrence, his claim is time-barred and he may not recover.").  The Court agrees.

Because each discrete discriminatory act starts a new clock for filing charges, Mr. Knox was required to bring each incident to the attention of the EEOC within 300 days of its

occurrence.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004) (stating that "[b]ecause the ADA's enforcement provision expressly incorporates § 2000e-5 of Title VII, claims for discrimination under the ADA also must be filed within 300 days after the alleged unlawful employment practice occurred.") (internal quotations and citation omitted).  By waiting more than 300 days after the alleged harassment incidents occurred, his discrimination and retaliation claims linked to these incidents are time-barred.[1]  *See Roney*, 474 F.3d at 460.  As such, the Court finds that the 2004 incident, the June 26, 2008 incident, and the March 2009 incident regarding alleged harassments made by foremen in the Snider Group against Mr. Knox concerning his alleged disability are specifically time-barred.

Thus, the only incidents identified by Mr. Knox that is not time-barred concern the events that occurred on August12, 2009 and September 9, 2009.  Importantly, there is no dispute that Mr. Knox's alleged resignation and the submission of the employment verification form to TMC Transportation occurred within the 300-day limitation period.

### 2.   Mr. Knox's ADA Discrimination Claims

The ADA prohibits employers from discriminating against disabled employees because of their disability.   42 U.S.C. § 12112(a).   As discussed previously, Mr. Knox argues the Defendants discriminated against him based on his disability of alcoholism in violation of the ADA.  In analyzing ADA claims, courts often look to the Civil Rights Act for guidance.  *See Dickerson v. Bd. of Trs. of Comty. Coll. Dist. No. 522*, 657 F.3d 595, 600 (7th Cir. 2011).  As in Title VII cases, a plaintiff can prove a disability discrimination claim under the ADA by using

---

[1] Mr. Knox has also made no attempts to invoke the continuing violations doctrine to get relief for any of his time-barred acts by linking them with acts occurring within the limitation period.  *See Hall v. Bodine Elec. Co.*, 276 F.3d 345, 353 (7th Cir. 2002).

either the direct or indirect method of proof. *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Under the direct method, a plaintiff can present either direct or circumstantial evidence to meet his burden.[2] *Dickerson*, 657 F.3d. at 601. Additionally, direct evidence may be established through an admission by the decision maker or that his actions were based upon prohibited *animus*. *Id.* With respect to the indirect method, the plaintiff must establish a *prima facie* case of discrimination by establishing that: (1) he is disabled under the ADA; (2) he was meeting the employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Once the plaintiff has established his *prima facie* case, the burden shifts to the defendant to identify a legitimate, non-discriminatory reason for its employment decision. Finally, if the defendant satisfies its requirement, the plaintiff must show that the defendant's proffered reason was pretextual.

Mr. Knox did not present evidence regarding the direct method; therefore, he must establish his ADA discrimination claim under the indirect method. As discussed above, in order to allege an ADA discrimination claim under the indirect method, Mr. Knox must first establish that he has a disability under the ADA. *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 670 (7th Cir. 2011). "A disability is defined under the ADA as: (A) a physical or mental impairment that substantially limits one or more major life activities of the individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Dickerson*, 657 F.3d at 600 (citing 42 U.S.C. § 12102(1)). Furthermore, "an impairment is a disability…if it

---

[2] The type of circumstantial evidence that a plaintiff may produce to defeat summary judgment includes: (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically received better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action. *Dickerson*, 657 F.3d at 607.

substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population," however, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(ii).  Pursuant to the ADA, major life activities can include caring for oneself, sleeping, walking, and working.  *Id.*; 42 U.S.C. § 12102(2).

The parties do not dispute that alcoholism can constitute an impairment under the ADA; however, the issue is whether Mr. Knox's alcoholism substantially limits a major life activity. The Supreme Court has articulated that disability determination is an "individualized inquiry," and courts must "determine the existence of disabilities on a case-by-case basis."  *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999).  Thus, a court must identify the major life activities the plaintiff claims are affected and then evaluate whether his impairment substantially limits those major life activities.  *See Larkin v. Methacton Sch. Dist.*, 773 F. Supp. 2d 508, 523 (E.D. Pa. 2011).  In support of his claim, Mr. Knox argues that he is substantially limited in his ability to "car[e] for himself, car[e] for his family, drink[], walk[], communicate[], and work[]." Dkt. 36 at 17.

In reviewing this claim, the Court concludes that Mr. Knox cannot establish that his alcoholism is a disability under the ADA because he has not presented sufficient evidence to show that it substantially limited his major life activities at the time he quit the Snider Group. *See Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir. 1998) (recognizing that the determination as to whether an individual is disabled must be made at the time of the employment decision).  Importantly, Mr. Knox has not presented sufficient evidence to show how his work was substantially affected by his impairment.  In support of his limitations, he

argues that he "had to leave work and go to rehabilitation programs".  The two occasions of outpatient rehabilitation treatment took place in 1992 and July 2008.  However, this type of limitation on his work activity is not enough to constitute a substantial limitation that gives rise to a disability finding.  *See Ames*, 629 F.3d at 670 (finding that the plaintiff's alcoholism was not a disability under the ADA even after she alleged that she had missed work to undergo alcohol treatment).  In fact, the record indicates that despite receiving treatment from St. Vincent Hospital in July 2008, he was allowed to return to work right away without any restrictions and indicates he was to attend the evening chemical dependency program.  Moreover, Mr. Knox has not provided sufficient evidence that he was substantially limited in any other particular major life activity.  *See Larkin*, 773 F. Supp. 2d at 525 (finding that plaintiff's alcoholism was not a disability when she did not provide specific evidence demonstrating how her alcoholism affected her ability to think or the severity of her limitations).  Without any further evidence regarding the severity of his limitations due to his alcoholism, Mr. Knox has not met his burden of establishing he has an actual disability under the ADA.

Next, Mr. Knox argues that even if he is not actually disabled, he has a record of a disability.  In order to have a record of disability, an individual must show he "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities."  29 C.F.R. § 1630.2(k)(1).  "This inquiry is fact intensive and focuses on whether the plaintiff has submitted evidence that the actual extent of his or her impairment was substantial." *Larkin*, 773 F. Supp. 2d at 527 (quoting *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 437 (3d Cir. 2009)).  In support of his argument, Mr. Knox contends that Defendants had a "record of alcoholism" concerning him.  However, he has not specifically identified or designated which records the Defendants may have possessed, if any, or the nature

of such records.  Because Mr. Knox has not presented the Court with sufficient evidence, other than his testimony, concerning how his alcoholism was imposing a substantial limitation on his major life activities, he has not demonstrated an inference that he has a record of disability.

Lastly, Mr. Knox asserts that he is also disabled under the ADA because Defendants regarded him as disabled.  *See* 42 U.S.C. § 12102(1)(C).  To establish a disability on this basis, a plaintiff must show that his employer as "a covered entity takes a prohibited action against the individual because of an actual or perceived impairment, even if the entity asserts, or may or does ultimately establish, a defense to such action."  29 C.F.R. § 1630.2(l)(2).  With respect to this argument, Mr. Knox again has not provided sufficient evidence to demonstrate that a jury could reasonably conclude that the Defendants regarded him as disabled due to his alcoholism. For example, while Defendants may have been aware of Mr. Knox's visits to St. Vincent Hospital for rehabilitation in 1992 and 2008, Mr. Knox has not presented evidence that suggests the Defendants tried to terminate him because they regarded him as disabled.  *See Larkin*, 773 F. Supp. 2d at 528.  As such, Mr. Knox has not identified the existence of a genuine issue of material fact regarding whether he was disabled under the "disability" definition of the ADA.

Even assuming *arguendo* that Mr. Knox was able to meet the first prong of his *prima facie* case, he is unable to establish the remaining elements of his *prima facie* case under the indirect method.  With respect to the third prong, an adverse employment action must be materially adverse.  *See Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (noting that an adverse employment action is one that significantly alters the terms and conditions of an individual's employment).  As such, adverse employment actions generally fall into three categories: "(1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skill to

atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to a constructive discharge." *Ferguson v. Metalcut Prods.*, No. 10-c-890, 2012 WL 2048221, at *6 n.3 (E.D. Wis. June 4, 2012) (citing *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744-45 (7th Cir. 2002)).   Here, Mr. Knox contends that he quit his job as of August 10, 2009, and then was terminated by the Snider Group in a discriminatory manner as evidenced by the August 19, 2009 termination letter.   While Defendants argue that Mr. Knox cannot maintain both arguments, looking at the facts in the light most favorable to Mr. Knox, the Court will assume he was terminated.   Thus, Mr. Knox can satisfy the third prong of his *prima facie* case.

Regardless, Mr. Knox's ADA discrimination claim still fails because he cannot show that he met the employer's legitimate employment expectations nor can he identify a similarly situated employee who was treated more favorably.   With respect to the second prong, Mr. Knox admitted in his deposition that he did not report to work for five consecutive days between August 10 and August 15, 2009.   Specifically, Mr. Knox testified as follows:

> Q.   What in the letter do you disagree with?
> A.   I quit.  I wasn't terminated.
> Q.   When is it that you maintain that you quit?
> A.   I just quit.  I never told anybody.
> Q.   You just quit without telling anybody?
> A.   Yes, sir.
> Q.   So when you stopped showing up for work, in your mind you had quit your job?
> A.   Yes, sir.
> Q.   So in your mind, you had already quit as of August 10?
> A.   Yes, sir.
> Q.   Even though at that point, you hadn't told anybody at The Snider Group?
> A.   Yes, sir.
>      ....

The Seventh Circuit stated that "it almost goes without saying that an employer has a legitimate interest in insuring that each employee's work continues at a steady pace to meet the employer's

production needs." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1114-15 (7th Cir. 1992). Because Mr. Knox did not show up to work for five consecutive days, he was not meeting his employer's legitimate expectations. Furthermore, Mr. Knox has not established that a similarly situated, non-disabled employee was treated more favorably than him. Although Mr. Knox says he was harassed by his supervisor, Mr. Koch, he has not presented the Court with evidence that other employees were treated more favorably. The undisputed evidence indicates that Mr. Koch yelled and cursed at Mr. Knox during his employment calling him names such as "dumbass". Unfortunately for the employees at the Snider Group, Mr. Koch also had the same attitude toward many other company employees including, Brian Stevens, David Noel, Gary Foster, and August Koch, III. Because Mr. Knox cannot identify to the Court a similarly situated, non-disabled employee who was treated more favorably than him, he has not met the fourth prong. Accordingly, because Mr. Knox cannot establish all the elements of his *prima facie* case, the Court concludes his ADA discrimination claim fails, and Defendants are entitled to summary judgment on this issue.[3]

### 3. Mr. Knox's Retaliation Claim

Mr. Knox also alleges that the Defendants retaliated against him in violation of the ADA "because of his complaints with regard to his disability." The ADA prohibits an employer from retaliating against an employee who has raised an ADA claim. *Cassimy v. Bd. of Educ. of Rockford Pub. Schs.*, 461 F.3d 932, 938 (7th Cir. 2006). Specifically, the ADA's anti-retaliation provision provides that "[n]o person shall discriminate against any individual because such an

---

[3] In Mr. Knox's second amended complaint, he also alleges that Defendants when acting with "malice and with deliberate indifference, failed to keep [Plaintiff's] medical records separate and discriminated against Plaintiff…" under 42 U.S.C. § 12112(d). Dkt. 23 at 4. Here, Mr. Knox argues that Defendants failed to maintain his medical records separately from his personnel records, resulting in his medical records not being confidential. The Fifth Circuit has spoken on this issue and found that a violation of Section 12112 was not intended to give rise to damages liability under the ADA. *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 561 (5th Cir. 1998). The Court is persuaded by the Fifth's Circuit's holding and concludes that Mr. Knox has not raised a cognizable claim under 42 U.S.C. § 12112.

individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."   42 U.S.C. § 12203(a).   To establish a case of retaliation under the direct method, a plaintiff must present evidence showing:  (1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) a causal connection between the protected activity and the adverse action.  *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007).  Under the indirect method of proof on a retaliation claim, the plaintiff must demonstrate: (1) that he was engaged in a protected activity; (2) that he was subject to an adverse employment action; (3) that he performed his job satisfactorily; and (4) that no similarly situated employee who did not engage in protected activity suffered an adverse employment action.  *Id.* at 788.  The Court need not engage in a full analysis with respect to both methods because Mr. Knox's claim fails at the outset.

The Seventh Circuit stated that "it is axiomatic that a plaintiff engage in a statutorily protected activity before an employer can retaliate against her for engaging in statutorily protected activity."  *Durkin v. City of Chi.*, 341 F.3d 606, 614-15 (7th Cir. 2003).  Therefore, Mr. Knox must first show that he engaged in a statutorily protected activity.  Mr. Knox has not met his burden in establishing this first element of his retaliation claim.  Specifically, the complaints he made regarding his foreman calling him names and spreading rumors that he had gone to rehabilitation in 2004 and 2008 are time-barred.  Any complaints that Mr. Knox made that were not time-barred were too vague and would not put a reasonable employer on notice of any potential violation of the ADA.  *See id.* at 615 (finding no viable retaliation claim on summary judgment when plaintiff's claims "were vague and concerned subject matters other than harassment" by setting forth evidence that he engaged in a statutorily protected activity).  So,

while Mr. Knox testified in his affidavit that Mr. Koch harassed him and called him an alcoholic numerous times in the presence of other employees, this claim fails as Mr. Knox offers no specifics as to when this occurred, whether it was reported or other specifics regarding the alleged incidents.  Likewise, Mr. Knox's claim that he was harassed in about March 2009 is vague. Mr. Knox alleges that he complained about harassment, but fails to allege discriminatory treatment regarding his alcoholism disability. In fact, the complaints against Mr. Koch were that Mr. Koch he was disrespectful and "too controlling". Accordingly, the Court concludes that Mr. Knox's retaliation claim fails and Defendants are entitled to summary judgment on this issue.

**B.    Defamation State Law Claim**

Finally, Mr. Knox alleges that on September 9, 2009, Defendants made false and defamatory statements to other persons and as a result imputed misconduct in his trade, profession, and occupation.  Specifically, Mr. Knox asserts that Mr. Snider made a number of false statements to TMC Transportation on his employment verification form.   Defendants counter by arguing that Mr. Knox has presented insufficient evidence concerning "actual malice," an element of his defamation claim, thus his defamation claim fails.

To establish a claim for defamation in Indiana, a plaintiff must prove the following elements: (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages.  *Lovings v. Thomas*, 805 N.E.2d 442, 447 (Ind. Ct. App. 2004).  As such, a person alleging defamation is required to show the communication was made with actual malice.  *Kitco, Inc. v. Corp. for General Trade*, 706 N.E.2d 581, 588 (Ind. Ct. App. 1999).  The actual malice standard of proof in defamation cases involving matters of public or general concern apply not only to public figures, but to private individuals as well.  *Journal-Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 449 (Ind. 1999).  Actual malice occurs where a "defamatory falsehood was

17

published with knowledge of its falsity or with reckless disregard of whether it was false." *Id.* Publications are made with reckless disregard of the truth when the publisher has a high degree of awareness of their probable falsity. *Indianapolis Newspapers, Inc. v. Fields*, 259 N.E.2d 651, 661 (1970). To establish actual malice, the individual challenging the speech needs to prove by clear and convincing evidence that the speaker "in fact entertained serious doubts as to the truth of his publication, or acted with a high degree of awareness of…probable falsity." *Kitco*, 706 N.E.2d 581, 588 (Ind. App. Ct. 1999). Further, the determination of whether a comment or statement is defamatory is generally a question of law. *See Ratcliff v. Barnes*, 750 N.E.2d 433, 436 (Ind. Ct. App. 2001). Finally, a defendant is entitled to summary judgment on a defamation claim if he demonstrates that the undisputed material facts negate at least one element of the plaintiff's claim. *Shine v. Loomis*, 836 N.E.2d 952, 956 (Ind. Ct. App. 2005).

Mr. Knox contends that his defamation claim does not fail as a matter of law because Mr. Snider's statements to TMC Transportation that he was terminated, he failed to submit to a drug or alcohol test, and that he did not complete a return-to-duty process were false and constitute evidence of malice. The Court disagrees. The undisputed facts indicate that Mr. Snider did not entertain serious doubts nor did he have a high degree of awareness that his statements on Mr. Knox's employment verification form were false. Specifically, on June 26, 2008, Mr. Snider was called to the jobsite by the foreman, who expressed concerns regarding Mr. Knox's behavior. Upon encountering Mr. Knox, Mr. Snider observed he had bloodshot eyes and was slurring his speech. After a confrontation with Mr. Snider, Mr. Knox gave him his company ID and left the jobsite. Importantly, the undisputed facts indicate that Mr. Snider dictated a memorandum in Mr. Knox's employment file that same day indicating that Mr. Knox had refused to submit to a drug and alcohol test and opted to quit rather than be tested. It is

undisputed that Mr. Knox met with Mr. Snider and Mr. Shotts concerning his use of alcohol on June 30, 2008, and on July 2, 2008.  Although Mr. Knox denies drinking on the job on June 26, 2008, he admits to drinking whiskey the night before and it is undisputed that he went to St. Vincent Hospital for alcohol treatment following the incident.  These undisputed facts support that Mr. Sniders did not act with malice when he indicated his belief that Mr. Knox refused a drug test.  Additionally, whether Mr. Knox quit or was terminated, the undisputed facts are that The Snider Group sent a letter to Mr. Knox informing him he was terminated from his position due to his unexplained absences from work during August 2009.

When viewing the facts in the light most favorable to Mr. Knox, he has not presented sufficient evidence to show that Mr. Snider made his statements with actual malice.  *See Shine*, 836 N.E.2d at 959-60 (reversing trial court's ruling denying defendant's summary judgment motion on defamation claim when plaintiff did not have sufficient evidence of actual malice).  A crucial factor in the actual malice determination is the defendant's state of mind, which "is a subjective fact that may be shown by indirect or circumstantial evidence" *Id.* (citation omitted). Having determined no direct evidence of actual malice, the Court will determine whether there was sufficient circumstantial evidence to support Mr. Knox's allegation of actual malice.

With respect to circumstantial evidence of actual malice, Mr. Knox argues Mr. Snider "acted mad at me because I was quitting," then terminated him after he quit and made false statements about him. The Court finds this evidence insufficient to establish that Defendants acted with actual malice.  Throughout his twenty-three year career with the Snider Group, the Defendants had always been supportive of Mr. Knox.  Further, there is nothing in the responses on the employment verification form which indicate Defendants were "mad" at Mr. Knox.  In fact, in the "comments" section of form, the only additional comments provided by Mr. Snider

related to the fact that he would not need another DOT physical until December 2009.  The Court finds that there is no direct or circumstantial evidence of actual malice in an attempt to interfere with Mr. Knox's ability to obtain employment.

Based on the undisputed evidence, Mr. Snider had reason to believe and did, in fact believe that the information he provided on Mr. Knox's employment verification form was true and accurate.  And, while Mr. Snider admits that he made an inaccurate statement regarding a return to duty process question, this inaccurate statement alone is insufficient to constitute evidence of malice when the veracity of his other statements are supported by the undisputed facts.[4]  Dkt. 37-4 at 90:18-91:2; *see Love v. Rehfus*, 946 N.E.2d 1, 15 n.13 (Ind. 2011) ("Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified.") (internal citation and quotations omitted).  Moreover, even assuming Mr. Snider's statements were false, Mr. Knox has not provided the Court with evidence from his designated materials that show or raise a reasonable inference that Mr. Snider acted with malice in completing the employment form.  *See Kitco*, 706 N.E.2d at 590.[5]  Accordingly, the Court concludes that Mr. Knox's defamation claim fails as a matter of law, and the Defendants are entitled to summary judgment on this state law claim.

---

[4] Mr. Snider stated that his response of "no" regarding whether Mr. Knox completed a return to duty process was made because he misinterpreted the question.  Specifically, he believed that the question concerned whether the Snider Group had a complete, written return to duty process policy.  According to Mr. Snider, he did not believe the company had such a formal written policy.  *See* Dkt. 37-4 at 91:7-15.

[5] Even assuming *arguendo* that Mr. Knox could establish all of the elements of his defamation claim, the Court finds that Defendants are still entitled to summary judgment on the defamation claim because his statements are protected by qualified privilege.  Qualified privilege is a defense to a defamation claim and protects personnel evaluation information communicated in good faith.  *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992).  Here, Mr. Snider's statements are protected by qualified privilege because Indiana's Supreme Court has ruled that former employers need to be free to communicate sincerely to prospective employers without fear of a defamation action.  *See Trail v. Boys and Girls Clubs of N.W. Ind.*, 845 N.E.2d 130, 137 (Ind. 2006).  Importantly, Mr. Knox has not presented sufficient evidence to overcome such a privilege by showing that it has been abused in some manner.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motion for Summary Judgment (Dkt. 27) is

**GRANTED.**  A separate judgment shall accompany this Entry.

SO ORDERED.

Date:   11/27/2012

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Richard L. Darst
COHEN GARELICK & GLAZIER
rdarst@cgglawfirm.com

Dane Andrew Mize
SKILES DETRUDE
dmize@skilesdetrude.com